[No. 25861. Department Two. October 29, 1935.]

WILLIAM RIVARD *et al., Appellants,* v. JAMES LOUDON *et al., Respondents.*[1]

*H. A. LaBerge,* for appellant.

*Cheney & Hutcheson, Walter J. Robinson, Jr.,* and *Lee C. Delle,* for respondents.

BEALS, J.—During the month of April, 1926, Yakima City Creamery, Inc., a corporation, being the owner of a tract of land approximately seventy acres in extent,

[1]Reported in 50 P. (2d) 914; 50 P. (2d) 1151.

situated in Yakima county, agreed by a written executory contract to sell the land to one Morford for a consideration of ten thousand dollars, payable over a period of years. Four years later, Mr. Morford entered into a contract with Oscar Lenseigne, whereby the latter agreed to purchase the land for eleven thousand dollars. During the month of February, 1932, Lenseigne was in default in his payments under this contract, and as the result of this default, Morford was lagging in his payments to his vendor. Shortly thereafter, William Rivard, the plaintiff or claimant herein, purchased Mr. Morford's equity in the land and loaned Lenseigne five hundred dollars, for which he received the latter's note.

Prior to the time Mr. Lenseigne succeeded to Mr. Morford's rights in the property, no hops had been grown thereon. Believing that such a crop would be profitable, Mr. Lenseigne planted hops on twenty acres of the land, entering into a contract with Lloyd L. Hughes, Inc., a corporation, for the sale of the hops to be grown on that particular twenty acres for the years 1933 to 1936, inclusive.

Desiring to plant an additional ten acres in hops, Lenseigne entered into an agreement with Rivard, whereby the latter advanced money to the former and agreed to purchase, at twenty cents per pound, twenty thousand pounds of hops to be grown on the ten acre tract. The agreement was to cover a five year period, and the purchase price of the hops was to be applied first in settlement of advances made by Rivard, the balance to be credited by the latter upon the land contract. During the first year (1933), only seven bales of hops were produced upon the ten acre tract, this quantity being insufficient to repay the $435 which Rivard had advanced. During the following year, Rivard advanced $1,300 in cash and a sum in excess

of $1,100 for material and by way of a guarantee of a bill for lumber used in the construction of a hop kiln. No portion of these advances was repaid.

Lenseigne, desiring to plant additional land to hops, was advised by Mr. Lloyd Hughes that Mr. James Loudon might be interested in financing the crop. Under date March 21, 1934, Lenseigne and Loudon entered into an agreement, according to the terms of which the latter agreed to advance money and to accept as security therefor a chattel mortgage upon the crops to be produced upon a seven acre tract, and also upon the product of the ten acre tract "under contract to William Rivard;" the parties agreeing that the Loudon security was subject to the chattel mortgages and contracts held by William Rivard and Lloyd M. Hughes, Inc. Messrs. Lenseigne and Loudon agreed that they were to share the profits in the hops grown on the seven acre tract, twelve cents a pound being agreed upon as the cost of production and baling.

During the year 1934, the ten acre tract covered by the agreement with Rivard produced ninety-five bales of hops, the seven acre tract producing a quantity insufficient to reimburse Mr. Loudon for his advances, which had been secured by chattel mortgages, one upon the crops to be grown upon the seven acre tract, the other upon the "entire crop over L. L. Hughes Inc., contract of 30,000 lbs. and Wm. Rivard's contract of 20,000 lbs."

James Loudon, not receiving the moneys due him, commenced an action against Lenseigne, causing a writ of attachment to be issued and levied upon the ninety-five bales of hops which had been produced on the ten acres referred to as the tract covered by the Rivard contract, these hops being still in Mr. Lenseigne's warehouse on the property. William Rivard thereupon filed, by way of affidavit, his third party

claim to the ninety-five bales of hops and took possession of the property under a claim bond. The matter proceeded to trial without pleadings other than the affidavit filed on behalf of Mr. Rivard, and the trial court, after a hearing, entered findings of fact and conclusions of law in Mr. Loudon's favor and awarded him judgment against Mr. Rivard for $2,700 and against the latter's surety up to the amount of its bond, the judgment further providing that, except as to costs, the same would be satisfied by re-delivery of the attached property.

From this judgment, William Rivard and his surety have appealed, assigning as error the entry of the judgment against them and the failure of the trial court to enter judgment in Mr. Rivard's favor.

The assignments of error may be discussed together. It may be assumed, as argued by appellant, that it appears from the evidence that it was agreed between appellant and Lenseigne that the hops to be grown on the ten acre tract up to the amount of twenty thousand pounds per annum would be sold to appellant at twenty cents per pound, and that, pursuant to such agreement, appellant advanced money, a considerable amount of which was paid out for picking the 1934 crop; that the crop harvested from the ten acre tract was kept separate from hops grown on the rest of the land and was baled and stored separately from the rest of the crop. It may also be assumed that these hops were insured for the benefit of Lenseigne and of appellant "as his interest may appear."

Appellant submits authorities to the effect that an attaching creditor can acquire no better title than that of the debtor at the date of the levy; that such a creditor is not a *bona fide* purchaser; and that, in such a proceeding as this, the third party claimant is required to prove only an ownership or right of

possession superior to that of the attaching creditor. In so far as applicable to the situation here presented, these propositions may be assumed as correct. The question, then, is whether or not, at the time of the levy under respondent Loudon's writ of attachment, Lenseigne's title to the hops was superior to that of appellant.

It appears that Lenseigne, prior to this levy, had sold certain hops which were subject to a mortgage in respondent's favor, and that for this reason respondent had lost confidence in Lenseigne and brought suit against him.

While respondent undoubtedly knew that there was an agreement between Lenseigne and appellant concerning the hops grown on a portion of the land, it is admitted that there was no contract in writing between the parties, and that the ninety-five bales of hops were still stored in the warehouse located on the property and were marked with Lenseigne's initials. Appellant argues that his contract with Lenseigne had been carried out in all of its terms, with the exception of the making of physical delivery of the hops; contending that such delivery was unnecessary because the parties interested had recognized the existence of the contract, and that the hops were, in fact, appropriated to the contract by Lenseigne and specifically set aside for that purpose.

Respondent argues that the contract between appellant and Lenseigne was, as to him, void under the statute of frauds, as contained in the uniform sales act. Appellant contends that the defense of the statute of frauds is not open to respondent, because not pleaded, but in this connection it must be borne in mind that there were no pleadings whatever, save the affidavit by way of a third party claim filed by appellant.

■ The statute of frauds, relied upon by respondent, being Rem. Rev. Stat., § 5836-4 [P. C. § 6227-4], subdivisions (1) and (2), reads as follows:

"(1) A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

"(2) The provisions of this section apply to every such contract of sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply."

The goods here in question far exceeded fifty dollars in value. There was no note or memorandum in writing embodying any agreement concerning the same, signed by either party. While it is undoubtedly true that appellant had loaned Lenseigne a considerable sum of money, part of which had been used in harvesting the crop, it cannot be held that the financial transaction between the parties constituted a part payment pursuant to the contract or as something in earnest to bind the same. The money was loaned or advanced by appellant to Lenseigne, and, while it was contemplated by the parties that all or a portion of the loans or advances would be repaid by sale of the hops, the transaction, in so far as the transfer of

money from appellant to Lenseigne is concerned, did not comply with the terms of the statute, which, as stated in Benjamin on Sales (7th ed.), p. 180, obviously contemplates "that something of value must be really given and received towards payment."

The foregoing text was by this court quoted with approval in the case of *Hewson v. Peterman Mfg. Co.*, 76 Wash. 600, 136 Pac. 1158, 51 L. R. A. (N. S.) 398, Ann. Cas. 1915D, 346, in which other authorities to the same effect are cited. In the case of *Coleman v. St. Paul & Tacoma Lumber Co.*, 110 Wash. 259, 188 Pac. 532, this court said:

"True, the appellant contends that the sum expended by him in exploring the property amounted to the giving of something in earnest, but plainly this is not the meaning of the statute. It is obviously contemplated that something of value shall pass to the promisee, something given to and received by him towards payment; acts merely preliminary, or ancillary to the agreement, such as investigations of the property, are not sufficient."

We are also thoroughly convinced by an examination of the record that it cannot be held that there was ever any delivery of the ninety-five bales of hops to appellant. The hops were still in Lenseigne's possession, stored in his warehouse, stamped with his initials. True, he may have stacked them separately from other bales of his hops, and he may have determined in his own mind that these hops belonged, or should be delivered, to appellant, but no physical delivery of the property was ever accomplished, and a mere mental attitude or determination was insufficient to vest title in appellant as against the writ of attachment levied by respondent.

In connection with the matter of the delivery of personal property as between buyer and seller, it is provided in the uniform sales act that

"It is the duty of the seller to deliver the goods, and of the buyer to accept and pay for them, in accordance with the terms of the contract to sell or sale." Rem. Rev. Stat., § 5836-41 [P. C. § 6227-41].

Many authorities are cited by the parties, but we are satisfied that, under the evidence, it must be held that no delivery of the hops was ever made to appellant, and that the acts which appellant argues constituted an appropriation of the bales to or for his benefit were wholly insufficient to divest Lenseigne's title thereto, and that respondent by his writ of attachment obtained a claim to the hops superior to that of appellant.

The trial court, therefore, did not err in dismissing appellant's claim, and the judgment appealed from is accordingly affirmed.

MAIN, BLAKE, HOLCOMB, and TOLMAN, JJ., concur.