[No. 30031. Department One. October 1, 1946.]

ST. PAUL & TACOMA LUMBER COMPANY, *Appellant,* v.
R. S. FOX *et al., Respondents.*[1]

[1]Reported in 173 P. (2d) 194.

*Grosscup, Ambler & Stephan* and *Eisenhower, Hunter & Ramsdell,* for appellant.

*McMicken, Rupp & Schweppe* and *Mary Ellen Krug,* for respondents.

JEFFERS, J.—The only record before us on this appeal is the second amended complaint filed by plaintiff, St. Paul & Tacoma Lumber Company, a corporation, on March 13, 1946; a demurrer, filed by defendants, R. S. Fox and Margaret Fox, his wife, Kosmos Timber Company, Mountain Lumber Company, Tacoma Export Lumber Company, R. S. M. Nicholson, Seattle Export Lumber Company, the estate of Johanne Fox, deceased, and R. S. Fox, executor of the estate of Johanne Fox, deceased, United States Plywood Corporation, and Soundview Pulp Company, to the second amended complaint (hereinafter referred to as the complaint), on the ground that the complaint does not show upon its face facts sufficient to constitute a cause of action; an order sustaining such demurrer, the order merely stating that "defendants' demurrer to the plaintiff's second amended complaint is hereby sustained"; a judgment of dismissal of the cause made and entered on April 25, 1946, after plaintiff had elected not to plead further but to stand upon the complaint; and notice of appeal by plaintiff from the judgment entered.

Appellant, St. Paul & Tacoma Lumber Company, a corporation (hereinafter referred to as St. Paul, or appellant, except where the complaint is quoted), assigns as error the sustaining of respondents' demurrer to the complaint, and the dismissal of the action.

The only issue before this court being the question of whether or not the complaint states a cause of action, it will be necessary to set out what we deem to be the essential allegations relied upon by appellant to support its contentions.

The complaint consists of some forty-seven paragraphs, exclusive of the prayer. The first twenty-five paragraphs

allege the identity of the parties appellant and respondent, the interrelations existing between all parties prior to the present controversy, the nature of the business conducted by the parties, and the timber requirements of each.

Johanne Fox was the former wife of R. S. Fox. She died, and R. S. Fox was duly appointed executor of her estate. A decree of solvency was entered in her estate on December 22, 1941. Margaret Fox is the present wife of R. S. Fox.

Mountain Lumber Company was a Washington corporation, which, on October 4, 1944, filed notice of voluntary dissolution, which notice named R. S. M. Nicholson as trustee to wind up the affairs of the corporation.

It is alleged in paragraph 5 of the complaint:

"That Tacoma Export Lumber Company is either a corporation or a style name under which the properties of Mountain Lumber Co. are now being operated or under which the present owners presently intend to operate."

Kosmos Timber Company is a Washington corporation, having its principal place of business at Seattle, Washington. It is the owner of large tracts of timber, and it also holds the right to remove the timber from a large acreage all located in Lewis and Skamania counties. It has preferential rights to obtain additional large acreage, all estimated to contain approximately seven hundred million feet of merchantable timber.

United States Plywood Corporation is a New York corporation, having its principal place of business in the state of Washington at Seattle. This concern is engaged in the manufacture and production of plywood and other lumber products at Seattle, and in its operation needs and consumes a large quantity of logs, known to the trade as "peelers." This corporation owns a thirty-one per cent stock interest in Kosmos Timber Company.

Soundview Pulp Company is a Washington corporation, having its principal place of business at Everett, Washington, and is engaged in the manufacture of paper pulp. In its operations it needs and uses large quantities of hemlock and white fir logs. It owns a ten per cent stock interest in Kosmos Timber Company.

It is alleged in paragraph 15:

"That R. S. Fox, Seattle Export Lumber Company and/or the Estate of Johanne Fox, Deceased, and R. S. Fox and Margaret Fox, his wife, now own or control 59% of the stock of Kosmos Timber Company, or did own or control 59% of the stock of Kosmos Timber Company on February 21, 1946."

Paragraph 16 alleges:

"That R. S. Fox is president of Kosmos Timber Company and that said R. S. Fox owns or exercises control over a majority interest in that company as hereinbefore stated, to-wit, 59% of its outstanding capital stock; that Kosmos Timber Company itself or through its lessee, R. S. Fox, is logging the timber upon and from the properties owned by it or under its control or from which it owns or has the right to remove standing timber, and that it has, owns or controls the equipment and facilities presently necessary to carry on and conduct the removal of timber therefrom, including logging railroads, truck roads and rights of way therefor; that plaintiff is advised and therefore alleges that certain properties and assets, machinery, equipment, facilities, etc., belonging to Kosmos Timber Company, or to which it is entitled, are either in the name of or in the possession of Seattle Export Lumber Company, R. S. Fox, the Estate of Johanne Fox, Deceased, or R. S. Fox and Margaret Fox, his wife."

In paragraph 18 it is alleged:

"That Seattle Export Lumber Company and Mountain Lumber Co. (Tacoma Export Lumber Co.), R. S. Fox, the Estate of Johanne Fox, Deceased, R. S. Fox and Margaret Fox, his wife, or some of them, are engaged in sawmilling, and that they, or some of them, in said sawmill operation in which they, or some of them, are interested or control, require and use large quantities of logs mainly of Douglas fir species known to the trade as sawmill type logs."

It is alleged in paragraph 11:

"That the plaintiff is advised and therefore alleges that R. S. Fox, the Estate of Johanne Fox, Deceased, Kosmos Timber Company and the community of R. S. Fox and Margaret Fox, his wife, or some of them, are substantial stockholders of Seattle Export Lumber Company; that R. S. Fox is the president of Seattle Export Lumber Company, and that R. S.

Fox has active and actual control of the business and dealing and affairs of said company."

From this maze, we emerge with the allegation found in paragraph 16, that R. S. Fox is president of Kosmos Timber Company, and that he owns or exercises control over fifty-nine per cent of the outstanding capital stock of that company.

It also appears that certain sawmill operations now being carried on by R. S. Fox or Seattle Export Lumber Company, which Fox controls, the estate of Johanne Fox, or R. S. Fox and Margaret Fox, his wife, require large quantities of Douglas fir logs, known as sawmill type logs, in sawmilling operations.

It further appears that United Plywood Corporation in its operations requires large quantities of logs known as "peelers," and that Soundview Pulp Company in its operations requires large quantities of hemlock and white fir logs.

It is alleged in paragraph 20:

"That United States Plywood Corporation and Soundview Pulp Company hold contracts requiring Kosmos Timber Company to give to them and each of them preferential rights to purchase logs produced by it; that R. S. Fox has by understandings or agreement arranged by and with the consent of himself and all the foregoing parties mentioned in this action, or some of them, to furnish to Seattle Export Lumber Company and Mountain Lumber Co. (Tacoma Export Lumber Co.) some or all the logs to which he claims to be entitled pursuant to contract dated as of December 24, 1941, by and between himself and Kosmos Timber Company."

It may be stated here that none of the contracts, or copies thereof, referred to in the preceding paragraph was attached to or made a part of the complaint.

Paragraphs 23, 24, and 25 allege:

"23. That plaintiff owns and operates a large sawmill at Tacoma, Washington, the present cut of which consists primarily of Douglas fir species known to the trade as sawmill type logs.

"That the plaintiff also owns, operates and controls or has preferential rights in and to large timber areas in Pierce

county, Washington, on which it conducts logging operations, the specie products of said operations being Douglas fir, cedar, hemlock, white fir and noble fir; and that from said specie products, as aforesaid, there is an insufficient quantity of Douglas fir sawmill type logs to meet the requirements of the plaintiff's sawmill operations for said type at Tacoma, Washington."

"24. That the specie stand on timber lands hereinbefore referred to as owned or controlled by Kosmos Timber Company is principally of the following species: Douglas fir, cedar, white fir and hemlock, and that the Douglas fir stand produces both 'peeler' type and sawmill type logs; that all these types are recognized and defined in Standard Log Scaling & Grading Rules."

"25. That plaintiff in its sawmill operations has a need for sawmill type Douglas fir logs in excess of that produced from its own timber areas and that readily obtainable by it on the open market; that the quality of the sawmill type logs produced from the properties hereinbefore described is particularly desirable for and useable in the said mill of plaintiff."

We now come to the paragraphs of the complaint which appellant contends contain allegations sufficient to constitute an enforcible contract between appellant and respondent R. S. Fox, whereby Fox agreed to sell to appellant fifty-nine per cent of the stock of Kosmos Timber Company, and, as a part of such agreement, to assign to appellant any and all rights which Fox had pursuant to an option or contract with Kosmos Timber Company to sell to Fox sawmill type logs.

Paragraph 26 alleges:

"That over a long period of time the officers and representatives of the plaintiff, to-wit, Mr. E. G. Griggs, II, its president, and Mr. C. Wagner, its vice-president, have conducted negotiations for the purchase of the represented 59% stock interest of R. S. Fox in Kosmos Timber Company; that in late 1945 and prior to his death, C. B. Sanderson was represented to be the agent of R. S. Fox for the sale of his or his controlled interest in Kosmos Timber Company and said C. B. Sanderson entered into discussions concerning a sale; that C. B. Sanderson died on or about December 15, 1945; that at or about said time R. S. Fox approached E. G. Griggs, II, and thereafter himself conducted or directed

the conduct of negotiations for the sale of 59% interest in Kosmos Timber Company hereinbefore referred to; that in the course of negotiations R. S. Fox stated to the plaintiff's officers that he desired to cause the liquidation of the Seattle Export Lumber Company and to discontinue all dealings in timber, logs or logging in the area of the Kosmos Timber Company; that he had authority to and would and could offer for sale to plaintiff a 59% stock interest in the Kosmos Timber Company holdings and certain other minor holdings either owned or controlled by him at a price approximating 59% of the net asset value of the company as shown by the balance sheet of September 30, 1945, to-wit, $1,800,000.00 to $1,900,000.00; that he would retire from and discontinue all dealings in timber, logs or logging in the operating area of the Kosmos Timber Company, and to effectuate this retirement would cancel or assign to the buyer at the latter's option his rights in the Kosmos Timber Company—R. S. Fox contract of December 24, 1941; that he would also offer to plaintiff the right to buy certain other timberlands owned or controlled by himself, Seattle Export Lumber Company or Mountain Lumber Co. (Tacoma Export Lumber Co.); that he would attempt, if St. Paul & Tacoma Lumber Company decided to purchase his stock, to clarify the log purchase options of United States Plywood Corporation and Soundview Pulp Company to purchase logs, all in consideration of the above stated purchase price for his 59% stock interest in Kosmos Timber Company and the agreement by St. Paul & Tacoma Lumber Company to give R. S. Fox the right to purchase 50,000,000 board feet of sawmill type logs at equally distributed intervals over a five-year period."

Paragraph 27 alleges:

"That as a result of said negotiations it was agreed:

"1) That values were to be based on the Kosmos Timber Company balance sheet of September 30, 1945.

"2) That balance sheet, a copy of which is attached hereto marked exhibit '7', shows as of September 30, 1945, that the net assets of Kosmos Timber Company were $3,226,685.

"3) That in arriving at the net worth of the corporation certain adjustments in the balance sheet of September 30, 1945, should and must be made.

"4) That for the purpose of the sale the total net assets of Kosmos Timber Company should be fixed as of September 30, 1945, at $2,542,373.

"5) That the value of said net assets fixed at $2,542,373 as of September 30, 1945, should be adjusted as of the date of sale.

"6) That in making the adjustment above referred to the following procedure should be adopted: (a) That those assets consisting of timber, timberlands (Milwaukee contract) railroads and equipment totalling $2,207,526 should not be changed or adjusted save and except as might be made necessary by reason of loss, destruction or disposal occurring between February 5, 1946, and the date of final adjustment, the details for which are set forth on exhibit '7-A' attached; (b) That a group of assets consisting of cash, accounts receivable, rents receivable, logs on cars, felled and bucked timber, supplies, timber deposits, income tax refund, prepaid expenses and the like, the total of which is shown by the balance sheet to be $404,889, and the current liability accounts, to-wit, accounts payable, accruals, notes payable and income tax payable for 1944-1945, totalling $70,042, should be adjusted to their respective correct amounts and totals as shown by the books of the company as of the time transfer of the stock, or as is stated in exhibit '2,' at the effective date of the sale, the details for which are set forth on exhibit '7-A' attached.

"7) That if Fox were to give up his rights to obtain logs from Kosmos Timber Company as per his contract with that company dated December 24, 1941, and to discontinue all dealings in timber, logs or logging in the operating area of Kosmos Timber Company, St. Paul & Tacoma Lumber Company would have to agree that Fox could purchase from St. Paul & Tacoma Lumber Company or Kosmos Timber Company 50,000,000 board feet of sawmill type logs over a five-year period for his Tacoma operations, to-wit, the Tacoma Export Lumber Co., and that Mr. Fox by this arrangement would be assured of a five-year supply for his Tacoma operations despite the transfer of his option dated December 24, 1941, to St. Paul & Tacoma Lumber Company.

"8) That a computation without the final adjustments above set out will show that 59% of the net assets of the corporation as of September 30, 1945, to-wit, $2,542,373, or the Fox interest, equals approximately $1,500,000.00."

Paragraph 28 alleges:

"That the discussions and negotiations referred to in paragraphs XXVI and XXVII hereof resulted in R. S. Fox making a *firm offer in writing,* pursuant to the oral under-

standings of the parties theretofore had and obtained, to sell 59% of the stock of Kosmos Timber Company to St. Paul & Tacoma Lumber Company for the sum of $1,500,000.00 more or less, provided the said offer was accepted on or before 5:00 P. M. March 5, 1946. A copy of said offer is attached hereto marked exhibit '1' and by this reference made a part hereof as if the same were fully set forth herein.

"That the basis of the offer was in accordance with common accepted practice in the sale of a going business or the stock of a corporation engaged in a going business and the sale price here was based on a balance sheet of recent date, final price being adjusted to reflect the current operations which, of necessity, must continue during the intervening period between the offer and its acceptance and the consummation of the sale." (Italics ours.)

Exhibit No. 1 above referred to is a letter from Fox to St. Paul and reads as follows:

"February 5, 1946

"E. G. Griggs, President
"St. Paul & Tacoma Lumber Co.
"Dear Sir:

"Pursuant to our conversation of today, at which Mr. C. Wagner was present, I will sell my 59% interest in Kosmos Timber Company to the St. Paul & Tacoma Lumber Co. for the sum of $1,500,000.00, adjusted more or less as follows:

"The value of the property has been based on the balance sheet submitted to you dated September 30, 1945, but revised to bring total net assets down to $2,542,373.00. Adjustments will be made in that group of assets consisting of cash, accounts receivable, rents receivable, logs on cars, felled and bucked timber, supplies, timber deposits, real estate and land, income tax refunds, prepaid expenses as shown on balance sheet at September 30, 1945, in total amount of $404,889.00 less current liabilities i. e. accounts payable, accruals, notes payable, income taxes payable 1944-45 shown in total $70,042.00 to correct the actual figures for these items at the effective date of sale.

"The remaining assets consisting of timber and timberlands, buildings and logging equipment, railroads and truck roads are valued in this offer at $2,207,526.00. Any changes in these items by corrections, purchases or sales will, by mutual consent, be established at the effective date of sale.

"I will undertake promptly to clarify and make definite

the log purchase options of the United States Plywood Corp. and Soundview Pulp Company to determine what portion of the log input will be available to the St. Paul & Tacoma Lumber Co. in the event the Lumber Company accept this offer.

"As a consideration in this deal, I will discontinue all dealings in timber, logs or logging in the operating area of the Kosmos Timber Company and will offer for sale to the St. Paul & Tacoma Lumber Company any and all timber and timberlands now owned by myself or the Seattle Export Lumber Co. or Mountain Lumber Co. (Tacoma Export Lumber Co.) in exchange for the right to purchase from the St. Paul & Tacoma Lumber Co. and/or Kosmos Timber Company, at the then current market prices, 50,000,000 feet of sawmill type logs in Puget Sound for use in the mill of the Tacoma Export Lumber Co. These logs are to be offered at regular, and at as equally distributed intervals over a period of five years commencing from the date of sale as conditions permit.

"This offer will expire at 5:00 P. M. Tuesday, March 5, 1946. During the interim, representatives of the Lumber Company will be permitted access to the property for examination and checking.                    (Signed)    R. S. Fox"

Paragraph 29 of the complaint alleges:

"That by letter dated February 21, 1946, addressed to R. S. Fox, deposited by United States registered mail, plaintiff accepted the said offer to sell made by R. S. Fox and agreed to pay over the full consideration upon delivery of the stock and the adjustment of the accounts in accordance with the previous understandings had between Mr. Wagner and Mr. Fox. A copy of said letter is attached hereto marked exhibit '2' and by this reference made a part hereof as if the same were fully set forth herein."

The letter referred to in this paragraph and attached to the complaint as exhibit No. 2 reads as follows:·

"Mr. R. S. Fox,                              February 21, 1946
"Kosmos Timber Co.,
"5427 East Marginal Way,
"Seattle, Washington.
"Dear Mr. Fox:

"By letter dated February 5, 1946, addressed to E. G. Griggs, President, St. Paul & Tacoma Lumber Company, you offered St. Paul & Tacoma Lumber Company the right

to buy 59% of the stock of the Kosmos Timber Co. therein represented to be owned by you, *upon the conditions set forth in said letter.*

"It is understood per paragraph 4 of the foregoing offer of February 5, 1946, that R. S. Fox is also to transfer to the St. Paul & Tacoma Lumber Company all his rights and interest under that certain log option by and between Kosmos Timber Co. and R. S. Fox dated December 24, 1941.

"This is to advise you that the St. Paul & Tacoma Lumber Company accepts your offer to sell it 59% of Kosmos Timber Co. stock, together with above stated log option, all in accordance with the terms set forth in your letter of February 5, 1946.

"We are today depositing in The Bank of California, N.A., Tacoma, Washington, the sum of $500,000 as down payment to be paid you on prompt delivery of the stock, and agree to pay the balance—$1,000,000 more or less, the exact amount to be determined in accordance with the letter of February 5, 1946 on or before December 31, 1946.

"Very truly yours,

(Italics ours.)        "(Signed)      E. G. Griggs, II

"President"

Paragraph 33 alleges:

"That on February 26, 1946, plaintiff received a letter signed by R. S. Fox, dated February 25, 1946, acknowledging receipt of plaintiff's acceptance (exhibit '2') of his offer to sell (exhibit '1'), in which letter R. S. Fox attempted to withdraw and repudiate his said offer to sell. A copy of said letter is attached hereto marked exhibit '3' and by this reference made a part hereof as if the same were fully set forth herein."

The letter referred to in the foregoing paragraph and attached to the complaint as exhibit No. 3 reads:

"February 25, 1946

"St. Paul & Tacoma Lumber Company

"Tacoma, Washington.

"Gentlemen:

"This will acknowledge receipt of your letter of February 21st, which in turn has reference to the letter which I signed as of February 5th.

"You have had at all times full knowledge of my stock purchase option contract with the United States Plywood Corporation and the Sound View Pulp Company, dated December 24, 1941, and it was definitely understood through-

out our negotiations that any arrangement to sell you my
59% of the stock in Kosmos Timber Company was subject to
that stock purchase option. I believe you have seen a copy
of that option and are familiar with its terms. You have
also been at all times aware that the legal steps required
to be taken under that option agreement of December 24,
1941, to free my stock of the prior option of United States
Plywood Corporation and Soundview Pulp Company have
not yet been taken.

"I have just returned from California and have not done
anything further about this phase of the matter. I also note
that your letter of February 21st contains in the final para-
graph a counter-proposal as to terms, to which I have never
agreed, and also that you leave the total amount to be paid
by you indefinite. The way I feel at present, I am not sat-
isfied with your counter-proposal concerning terms and
will not accept it.

"Paragraph four of my letter does not, as you suggest,
contain an agreement on my part to assign any log option.
You did condition your proposal to me upon obtaining a
modification of the log options issued by the Kosmos Tim-
ber Company to the United States Plywood Corporation
and the Soundview Pulp Company. You informed me that
you would not go ahead with the deal unless a modification
of those log options was obtained.

"I am writing this letter in response to yours of February
21st in order to make it plain that I do not construe, and
you are not to construe, our conversations and correspon-
dence to-date as being anything other than preliminary ne-
gotiations, subject to the log option above mentioned, and
further to advise you that your counter-proposals of Feb-
ruary 21st are not acceptable to me.

"In order that there may be no misunderstanding be-
tween us, I feel it is better that at this time I withdraw my
offer of February 5th (which was dictated by your Mr.
Wagner), and it is therefore, withdrawn.
                              "Yours very truly,
                                "(Signed) R. S. Fox"

Paragraph 36 of the complaint alleges:

"That on February 26, 1946, plaintiff replied to R. S. Fox's
letter of withdrawal and repudiation referred to in para-
graph XXXIII above demanding that said R. S. Fox make
delivery of the 59% stock interest in Kosmos Timber Com-
pany at once. A copy of said letter is attached hereto

marked exhibit '6' and by this reference made a part hereof as if the same were fully set forth herein."

The letter referred to in the foregoing paragraph and attached to the complaint as exhibit No. 6 reads:

"Mr. R. S. Fox,                                    Feb. 26, 1946
"Kosmos Timber Co.,
"Seattle.
"Dear Mr. Fox:
    "We acknowledge your letter of February 25, 1946.
    "Your letter of February 5, 1946 was an outright commitment on your part to sell St. Paul & Tacoma Lumber Company the 59% of the stock of Kosmos Timber Company upon the terms therein stated, provided same was accepted prior to March 5, 1946.  Our letter of February 21st was an acceptance of the offer and we hereby advise you that we expect you to complete the transaction at once.  Failing so to do, we will take such action as to us may seem appropriate.                      Yours truly
                        " (Signed)      E. G. Griggs, II
                                            "President"

Paragraph 37 alleges:

"That R. S. Fox has ignored plaintiff's demand of February 26, 1946 (exhibit '6') and has failed and neglected to make delivery of the stock, and plaintiff is advised and therefore alleges that said R. S. Fox intends to and will sell, transfer and deliver the 59% stock interest in Kosmos Timber Company to United States Plywood Corporation."

Paragraph 38 alleges:

"That plaintiff is ready, willing and able to accept delivery of the stock and otherwise fulfill its commitment as stated in its letter of February 21, 1946 (exhibit '2'), and to that end and for that purpose states that the sum mentioned in its letter of acceptance dated February 21, 1946, is still on deposit as herein stated and that plaintiff has sufficient funds available to pay the adjusted balance of $1,000,000.00 more or less, when the contemplated adjustments are made and the other matters mentioned in the letter of February 5, 1946 (exhibit '1') and the acceptance of February 21, 1946 (exhibit '2') as therein stated are concluded."

Paragraph 40 alleges:

"That if this plaintiff does not have the immediate pos-

session of the 59% stock interest in Kosmos Timber Company it will be deprived of a log source, and that the timber and logs to which it would have have been entitled will be disposed of elsewhere, and that the same are irreplaceable. That as heretofore stated the sole reason for the making of the contract by St. Paul & Tacoma Lumber Company for the purchase of R. S. Fox's 59% stock interest in Kosmos Timber Company was to assure it of a steady source of logs; that the timber holdings of Kosmos Timber Company constitute a substantial source of fir logs for the operation of the plaintiff's mill at Tacoma, Washington; that there is likewise a large amount of timber adjacent to and accessible to Kosmos Timber Company holdings; that the value of a lumber mill is based in a large measure upon its source of timber and logs, which sources are becoming increasingly scarce in the state of Washington, and that monetary damages cannot adequately compensate the plaintiff for the loss of the contract or the failure of Fox to consummate it."

We appreciate the length of the foregoing statement, but we are unable to see how, in fairness to the contentions of the parties concerned, it could be shortened. We are of the opinion that this is essentially an action to compel specific performance of a claimed contract entered into between R. S. Fox and appellant, wherein and whereby Fox agreed to sell to appellant fifty-nine per cent of the stock of Kosmos Timber Company, and, in connection therewith, Fox was to assign to appellant all his rights in a certain log option he held from Kosmos Timber Company to give to Fox a preference right to purchase Douglas fir logs of the sawmill type.

Rem. Rev. Stat., § 5836-4 [P.P.C. § 854-7] subd. (1), provides:

"A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf  . . ."

In *Hewson v. Peterman Mfg. Co.,* 76 Wash. 600, 136 Pac. 1158, Ann. Cas. 1915D, 346, 51 L. R. A. (N.S.) 398, we stated:

"It is established by the great weight of authority that corporate stock is goods, wares, and merchandise within the meaning of the statute of frauds. [Citing authority.]"

The above rule is cited with approval in *Coleman v. St. Paul & Tacoma Lbr. Co.,* 110 Wash. 259, 188 Pac. 532.

We find the following statement in *Sweeny v. Sweeny Inv. Co.,* 199 Wash. 135, 90 P. (2d) 716, 139 A. L. R. 847:

"We also think the oral agreement to resell to appellants their stock is within the statute of frauds, and therefore unenforceable. Rem. Rev. Stat., § 5836-4 [P.C. § 6227-4]; *Hewson v. Peterman Mfg. Co.,* 76 Wash. 600, 136 Pac. 1158, Ann. Cas. 1915D, 346, 51 L. R. A. (N.S.) 398; *Coleman v. St. Paul & Tacoma Lumber Co.,* 110 Wash. 259, 188 Pac. 532; *Rivard v. Loudon,* 184 Wash. 234, 50 P. (2d) 914, 1151."

Again, in *Coleman v. St. Paul & Tacoma Lbr. Co., supra,* we stated that a contract partly in writing and partly oral, under the statute of frauds, is an oral contract. In the cited case, we quoted from *Cushing v. Monarch Timber Co.,* 75 Wash. 678, 135 Pac. 660, Ann. Cas. 1914C, 1239:

" 'By an unbroken line of decisions we have held that, to meet this statute, the writing evidencing the agreement must be so complete in itself as to make a resort to parol evidence to establish any *material element* of the agreement unnecessary. The rule deduced from prior decisions and tersely expressed in *Engleson v. Port Crescent Shingle Co., supra* [74 Wash. 424, 133 Pac. 1030], is that: "A writing sufficient to satisfy the statute must be coextensive with the stipulation of the parties; that is to say, *it must express the entire contract and leave nothing that pertains to the essentials of the contract to be supplied by parol."* ' " (Italics ours.)

The only writing in the instant case which could form the basis for a contract between Fox and appellant is the offer contained in the letter of February 5, 1946, written by Fox to appellant, and the claimed acceptance of that offer contained in the letter of February 21, 1946, written by appellant to Fox, purporting to accept the offer made by Fox in his letter of February 5th.

It will be noted that the complaint sets out in great detail the claimed negotiations leading up to the Fox letter of February 5, 1946.

█ The general rule relative to the admission of prior and contemporaneous negotiations to contradict, vary, add to, or subtract from the terms of a written contract will be found in 17 C. J. S. 872, § 381, which reads as follows:

"A rule of the common law, enacted into statute in some jurisdictions, is that in the absence of fraud a written contract merges all prior and contemporaneous negotiations on the subject, together with all prior oral contracts, and together with and including antecedent correspondence and prior written memorandums; but this is in effect a statement, in different form, of the rule excluding evidence of prior or contemporaneous oral agreements to contradict or to modify a written contract, . . . based on the presumption that, in the absence of accident, fraud, or mistake, the whole engagement of the parties is expressed in the writing."

The rule last above referred to is cited with approval in *Sears, Roebuck & Co. v. Nicholas,* 2 Wn. (2d) 128, 97 P. (2d) 633.

In *McGregor v. First Farmers-Merchants Bank & Trust Co.,* 180 Wash. 440, 40 P. (2d) 144, Judge Steinert, speaking for the court, has the following to say in regard to the parol evidence rule:

"A few observations relative to the parol evidence rule may first be made. The rule, as generally and somewhat tersely stated, is that parol evidence cannot be received to contradict, vary, add to or subtract from the terms of a written instrument. The actual rule, however, as it is usually stated, is that all conversations and parol agreements between the parties prior to a written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the contract or showing *an intention* or *understanding* different from that expressed in the written agreement. 3 Jones on Evidence (2d ed.), p. 2699; 1 Greenleaf on Evidence (16th ed.), § 275; 5 Wigmore on Evidence (2d ed.), § 2425; Taylor on Evidence (11th ed.), § 1132.

"The parol evidence rule is not a rule of evidence, but is a rule of substantive law. *Andersonian Inv. Co. v. Wade,* 108 Wash. 373, 184 Pac. 327; 3 Jones on Evidence (2d ed.),

§ 1482, p. 2695; 5 Wigmore on Evidence (2d ed.), § 2400, p. 236. Hence, evidence properly falling within the inhibition of the rule does not become admissible merely because it has probative value or is not objected to. The rule applies not only to agreements whose terms are fully expressed in writing, but also to written agreements wherein certain obligations are implied by law. *Bryan v. Duff*, 12 Wash. 233, 40 Pac. 936, 50 Am. St. 889; *Allen v. Chambers*, 13 Wash. 327, 43 Pac. 57; 10 R. C. L. § 240, p. 1046. Or, expressed somewhat differently, the rule applies not only to the letter of the written document, but also to its legal effect. [Citing authority.]" (Italics ours.)

We may say here that we recognize certain exceptions to the rule last above referred to, as stated by appellant, but we are of the opinion such exceptions would be of no assistance in sustaining appellant's contentions herein.

We now desire to discuss the letter of February 5th, written by Mr. Fox to appellant, and the letter of February 21st, in answer thereto, written by appellant to Mr. Fox, and the letter of February 26th, written by appellant to Mr. Fox, after appellant had received the letter from Mr. Fox dated February 25th, wherein Mr. Fox purported to withdraw his offer contained in the letter of February 5th. It will be noticed that in the letter of February 21st written by appellant to Mr. Fox, and which is claimed by appellant to be an acceptance of Mr. Fox's offer contained in the letter of February 5th, appellant states:

"Dear Mr. Fox:

"By letter dated February 5, 1946, addressed to E. G. Griggs, President, St. Paul & Tacoma Lumber Company, you offered St. Paul & Tacoma Lumber Company the right to buy 59% of the stock of the Kosmos Timber Co. therein represented to be owned by you, *upon the conditions set forth in said letter.*" (Italics ours.)

We now refer to the letter of February 26th, written by appellant to Mr. Fox:

"Dear Mr. Fox:

"We acknowledge your letter of February 25, 1946.

"Your letter of February 5, 1946 was an outright commitment on your part to sell St. Paul & Tacoma Lumber Company the 59% of the stock of Kosmos Timber Company

*upon the terms therein stated,* provided same was accepted prior to March 5, 1946. Our letter of February 21st was an *acceptance of the offer* and we hereby advise you that we expect you to complete the transaction at once. Failing so to do, we will take such action as to us may seem appropriate." (Italics ours.)

It seems to us that there can be no question but that, by its claimed letter of acceptance of February 21st, and its letter of February 26th, appellant clearly indicated that it was relying upon the offer made by Mr. Fox in his letter of February 5th, and not upon any prior conversations or understandings. Appellant now contends that, by its letter of February 21st, it accepted Mr. Fox's offer as contained in the letter of February 5th.

██ Before discussing the question of whether or not appellant's letter of February 21st was an acceptance of such offer, we desire to discuss what is necessary to constitute an acceptance.

We stated in *Coleman v. St. Paul & Tacoma Lbr. Co., supra*:

"Again, it is the rule that, where the contract is alleged to consist, as it is in this instance, of an offer on the one side and the acceptance of the offer on the other, the acceptance, to constitute a binding contract, must be as broad as the offer, any conditions attached to the offer being in the nature of new proposals, which themselves must be accepted to make a binding contract. [Citing authority.]"

The question of acceptance was discussed in *Pearce v. Dulien Steel Products,* 14 Wn. (2d) 132, 127 P. (2d) 271. This was an appeal by plaintiff from an order dismissing the action after a demurrer to his amended complaint had been sustained. It was alleged in the complaint that respondent, Dulien Steel Products, Inc., was engaged in the business of buying and selling steel products; that, on October 22, 1940, appellant, by letter, offered to buy two cars of " '70 lb. rail and angle bars at this time for $15.00 per gross ton f. o. b. Armstead.' " To this proposal the respondent, under date of October 23, 1940, replied:

" 'We would not be interested in selling two . . . cars at any price of $15.00, but would accept price on two cars to help you out at $17.50 G. T.' "

On November 9th, the appellant reported to this counter-proposal as follows:

" 'Pursuant to my telephone conversation with Mr. White today and in answer to your letter of October 23, please be advised that we will purchase from you two carloads of No. 1 70-pound relay rail at $17.50 per gross ton, f. o. b. cars, Armstead, Montana.

" *'Hunt will inspect this rail for our customer and will probably designate rail to be rejected or accepted.'* (Italics ours.)"

In response to this letter, respondent wrote appellant a letter on November 12th, in which, among other things, it was stated: " ' . . . *we do not agree to the matter of Hunt's inspection. . . .* ' (Italics ours.)"

It is stated in the opinion that, while there were other letters, it was on the respondent's letter of October 23rd and appellant's reply of November 9th that appellant relied as establishing a contract, for the breach of which he sought damages. We held that the appellant's insistence that *"Hunt will inspect . . . and will probably designate rail to be rejected or accepted'* " constituted a conditional acceptance of respondent's offer; that it was not an unqualified acceptance of the offer contained in respondent's letter of October 23rd, but to the contrary, amounted to a new offer which was never accepted by respondent (citing *Colman v. St. Paul & Tacoma Lbr. Co., supra*).

In *Martinson v. Carter,* 190 Wash. 502, 68 P. (2d) 1027, we cited with approval the following quotation from 13 C. J. 281:

" 'An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement. This is true, for example, where an acceptance varies from the

offer as to time of performance, place of performance, price, quantity, quality, and in other like cases.' "

See, also, *Sillman v. Spokane Sav. & Loan,* 103 Wash. 619, 175 Pac. 296.

Having in mind the rules above announced, let us look at the offer of February 5th made by Mr. Fox, and again at the claimed acceptance of that offer in appellant's letter of February 21st. The letter of February 5th states, in paragraph one:

"Pursuant to our conversation of today, at which Mr. C. Wagner was present, I will sell my 59% interest in Kosmos Timber Company to the St. Paul & Tacoma Lumber Co. for the sum of $1,500,000.00, adjusted more or less as follows:"

Paragraph four:

"I will undertake promptly to clarify and make definite the log purchase options of the *United States Plywood Corp.* and *Soundview Pulp Company* to determine what portion of the log input will be available to the St. Paul & Tacoma Lumber Co. in the event the Lumber Company accept this offer." (Italics ours.)

It will be recalled that, in the complaint, reference is made to the log options granted by the Kosmos Timber Company, one to United States Plywood Corporation, apparently for "peelers," one to Soundview Pulp Company for logs to be used in the manufacture of paper pulp, and one to R. S. Fox for Douglas fir sawmill type logs. It is also stated in the complaint that Fox would cancel, or assign to appellant, at the latter's option, his preference right to purchase from Kosmos Timber Company sawmill type logs. We call attention again to paragraph 28 of the complaint, wherein it is alleged:

"That the discussions and negotiations referred to in paragraphs XXVI and XXVII hereof resulted in R. S. Fox making a *firm offer in writing.*" (Italics ours.)

It will be noticed that, in the fourth paragraph of Fox's letter of February 5th, he says nothing about his option to purchase from Kosmos Timber Company but refers only

to the option held by United States Plywood Company and Soundview Pulp Company.

■ In paragraph two of appellant's letter of February 21st, it is stated:

"*It is understood* per *paragraph 4,* of the foregoing offer of February 5, 1946, that R. S. Fox is also to transfer to the St. Paul & Tacoma Lumber Company all his rights and interest under that certain log option by and between Kosmos Timber Co. and R. S. Fox dated December 24, 1941." (Italics ours.)

Clearly, by the above paragraph, there was injected into the offer something not referred to in paragraph four of the offer. There is no question but that appellant considered the procuring of this Fox option a very material part of what it would acquire in connection with the purchase of the Kosmos Timber Company stock, but, as we see it, there was no obligation on the part of Fox, in making his firm offer, to include in that offer an agreement to assign to appellant the log option he held with Kosmos Timber Company, and he certainly did not so agree in his offer. If appellant did not desire to accept the offer as made, it was, of course, its privilege to reject it and make a counteroffer if it desired, and in our opinion, this in effect is what it did by paragraph two of the claimed letter of acceptance.

Appellant, recognizing the effect of the parol evidence rule, states on pages 31 and 32 of its brief:

"This reference [to paragraph two of its acceptance letter] contains no new matter and is but a clarification of the understanding of the parties that the personal option of R. S. Fox dated December 24, 1941, whereby he was to secure a preference on all 'sawmill' type Douglas fir logs, was to be assigned.

"The inclusion of the statement regarding the personal log option of December 24, 1941, as a reference to paragraph 4 has the effect of a conjunctive statement, that paragraph being the one relating to the specific undertakings of the offerer, R. S. Fox, and if the whole thought and intention of the parties in respect to these matters had been set out therein the paragraph would read as follows:

" 'I will undertake promptly to clarify and make definite the log purchase options of the United States Plywood Corp.

and Soundview Pulp Company to determine what portion of the log input will be available to the St. Paul & Tacoma Lumber Co. in the event the Lumber Company accept this offer *and [R. S. Fox is] also to transfer to St. Paul & Tacoma Lumber Company all [my] rights and interest under that certain log option by and between Kosmos Timber Company and R. S. Fox dated December 24, 1941.'* [Consolidation ours.]"

We are clearly of the opinion that appellant, as shown by the underlined portion of the above statement, sought to inject into the offer an additional agreement not contained therein, and seeks to bind Fox to the offer as interpreted by it.

Regardless of what may be said as to the negotiations leading up to the written offer of February 5th made by Fox, it is apparent, from the letter written by Fox to appellant on February 25th, that he did not intend, by his letter of February 5th, to agree to assign to appellant his log option with Kosmos Timber Company. This letter of February 25th, from Fox to St. Paul, states positively that paragraph four of Fox's offer contains no agreement on his part to assign to appellant any log option, and the letter further states why it does not contain such an agreement. Fox further states, in his letter of February 25th:

"I am writing this letter in response to yours of February 21st in order to make it plain that I do not construe, and you are not to construe, our conversations and correspondence to date as being anything other than preliminary negotiations, subject to the log option above mentioned, and further to advise you that your counter-proposals of February 21st are not acceptable to me.

"In order that there may be no misunderstanding between us, I feel it is better that at this time I withdraw my offer of February 5th (which was dictated by your Mr. Wagner), and it is, therefore, withdrawn."

We are clearly of the opinion that there was not such an unqualified acceptance of Fox's offer by appellant as to constitute a valid and binding contract between the parties. In other words, to establish the contract which appellant contends was made and entered into between the parties,

appellant would have to establish, by parol evidence, an essential element of the claimed contract in addition to the written offer, and this, in our opinion, it may not do.

█ In addition to what has been stated herein, we are further of the opinion that the claimed contract was so indefinite and uncertain, in regard to some of the essential features, as to be incapable of specific performance.

Referring again to the Fox letter of February 5th, it states:

"I will sell my 59% interest in Kosmos Timber Company to the St. Paul & Tacoma Lumber Co. for the sum of $1,500,000.00, adjusted more or less as follows:"

Then follows a paragraph in which certain suggestions are made as to adjustments in the value of the assets of Kosmos Timber Company. This paragraph indicates to us that there were many things to be subsequently adjusted between the parties, which adjustments would affect the value of the stock. We are not convinced that such a method is referred to and provided for in the offer as would make a final determination of the value of the items to be adjusted merely a matter of computation.

Further, in the third paragraph of the purported offer, it is stated:

"Any changes in these items by corrections, purchases or sales will, *by mutual consent,* be established at the effective date of sale." (Italics ours.)

It seems plain to us that the offer shows on its face that many things were to be decided in the future by mutual consent before the sale price of the stock could be determined.

It is apparent that, at the very beginning, the parties could not agree on the terms of the offer, and how a court could specifically enforce the contract claimed by appellant to have been made, depending, as it would, upon the mutual consent of the parties as to many of the items which would have to be considered in arriving at the sale price of the stock, we are unable to see.

Williston on Contracts (Rev. ed.), vol. 1, § 24, p. 49, has the following to say in regard to an offer of sale:

"The chief requirement is that the promise shall be sufficiently certain in its terms to enable the court to understand what the promisor undertakes. Likewise an offer must state with the same certainty the act or promise which the offeror agrees to take in return for his promise if the offeree accepts; or the offeree, being authorized so to do, must make certain in his acceptance the terms of the offeror's performance or his own."

We quote further from the same author, § 37, p. 99:

"A lack of definiteness in an agreement may concern the time of performance, the price to be paid, work to be done, property to be transferred, or miscellaneous stipulations in the agreement. Especially a reservation to either party of a future untrammelled right to determine the nature of the performance, or a provision that some matter shall be settled by future agreement, has often caused a promise to be too indefinite for enforcement."

It is undoubtedly true that, before there could be specific performance of the claimed contract in the instant case, there would have to be a determination of the exact amount to be paid for the stock. It seems to us that the offer is so indefinite and uncertain, depending, among other things, upon the mutual consent of the parties, that a court of equity should not attempt to specifically enforce it. See *Huston v. Harrington,* 58 Wash. 51, 107 Pac. 874.

■ In order for a court of equity to decree specific performance of a contract, the court must be able to determine what must be done to constitute performance. The indefiniteness of an agreement is an adequate reason for refusal to direct specific performance thereof. The contract itself must make the precise act which is to be done clearly ascertainable. 49 Am. Jur. 34, § 22, cited in *Keys v. Klitten,* 21 Wn. (2d) 504, 151 P. (2d) 989.

We quote from 17 C. J. S. 364-5, Contracts, § 36, subd. c (1):

"It is essential to a contract that the nature and the extent of its obligations be certain. If an agreement is uncertain it is because the offer was uncertain or ambiguous to begin with, for the acceptance is always required to be identical with the offer, or there is no meeting of minds and no agreement. If the person to whom the offer is made sees the

uncertainty and proposes a change which will make the agreement certain, this puts an end to the offer, and the agreement which he has suggested is the result of his new offer and the acceptance of the original proposer."

The quotation last above referred to was cited with approval in *Schuehle v. Schuehle,* 21 Wn. (2d) 609, 152 P. (2d) 608.

We are also of the opinion that the concluding paragraph of appellant's letter of February 21st was not an acceptance of the Fox offer, as made in his letter of February 5th.

It will be noticed, and appellant states on page 29 of its brief, that

"Neither the time nor date for completion of accounting, the delivery of the stock, the surrender of the personal option, or the payment is stated in the offer and under such circumstances the Sales Act presumes, in the absence of an understanding, completion and payment within a reasonable time. The parties discussed this matter and agreed that the time for final conclusion of the transaction was to be 'before the end of the year 1946.' "

It is apparent, we think, that appellant, in attempting to justify its acceptance, is relying upon a claimed contract partly in writing and partly oral, and this it may not do, for the reason hereinbefore stated, that such a contract, under our decisions, would be an oral contract and within the statute of frauds.

May we say in conclusion that a consideration of the amended complaint is very convincing of the fact, as stated in Fox's letter of February 25th, hereinbefore set out, that the conversations and correspondence to date constituted nothing more than preliminary negotiations, subject to some action on the part of Fox to free his stock from prior options to purchase it, held by United States Plywood Corporation and Soundview Pulp Company.

For the reasons herein assigned, the judgment of the trial court is affirmed.

BEALS, C. J., MILLARD, ROBINSON, and SCHWELLENBACH, JJ., concur.